**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

BERNARD POLLARD,

Plaintiff,

v.                                                             CASE NO. 1:24-CV-61-HAB

BRUCE HOLWERDA,

Defendant.

**OPINION AND ORDER**

*Pro se* Plaintiff Bernard Pollard—a familiar name to this Court[1]—believes he was wrongfully and discriminatorily terminated from his job at Creative Coatings in February 2024, and he filed this suit against the company's CEO, Defendant Bruce Holwerda. (ECF No. 1). Pollard's Complaint alleges four claims against Holwerda: (1) obstruction of justice; (2) wrongful termination; (3) sex discrimination; and (4) "unfair practice," all stemming from how Holwerda and the company reportedly mishandled investigations into the misconduct of Pollard and other employees. (*Id.* at 3). Holwerda has moved for summary judgment or alternatively dismissal of all claims (ECF No. 48). The matter is fully briefed (ECF Nos. 49, 55, 56) and ripe for consideration.[2] Because the Court agrees that the claims must be dismissed, Holwerda's motion will be GRANTED.

---

[1] Pollard is an avid Title VII litigant. Including this one, he has filed seven employment discrimination suits against former employers. *See Pollard v. Kelly Servs. Inc., et al.*, No. 1:93-cv-31-RBC; *Pollard v. Uniroyal Goodrich*, No. 1:95-cv-334-WCL; *Pollard v. Coventry Meadows*, No. 1:15-cv-330-WCL; *Pollard v. Jackson Cnty. Schneck Mem'l Hosp.*, No. 1:16-cv-7-WCL; *Pollard v. Ind. Dep't of Child Servs.*, No. 1:20-cv-260-HAB; *Pollard v. Web Indus., et al.*, No. 1:22-cv-483-HAB.

[2] On October 20, 2025, Pollard filed a letter entitled "Response to Defendant Last Response." (ECF No. 57). Pollard did not first seek—and the Court did not grant—permission to file a surreply, *see* N.D. Ind. L.R. 56-1(d), thus, the Court will not consider any argument made therein.

I. **Factual and Procedural Background**[3]

Pollard is a black male in his sixties. Defendant Bruce Holwerda is the CEO of Creative Coatings. Pollard began working at Creative Coatings—which provides powder and e-coating services—in April 2022 as an at-will general laborer in Creative Coatings' eco department. By March 2023, he was promoted to "lead man" in his department. In or around October 2023, he was once again promoted, this time to Supervisor of the powder coating department. (ECF No. 48-1, Pollard Dep. at 37–38).

Starting in December 2023, other employees began reporting to management issues they were having with Pollard. One female employee, Katrina Cooper, told her supervisor that Pollard was picking on subordinate female employees "all the time, going from one to the next," which she claimed was causing a disturbance in her work area. (ECF No. 48-3 at 1).  Barbara Nelson, another female employee, reported that Pollard had started "a rumor on the production floor that Nelson ha[d] 'sold herself' to Bernard Pollard for a $400 loan which made Nelson upset." (*Id.*) Nelson also claimed that after Pollard loaned her the money, he began to whisper suggestive comments to her, such as "when you gonna drop it off?" and "You look beautiful today." Nelson followed up this verbal report with a written complaint, which emphasized that she desired the conduct to stop.

Following Nelson's written complaint, Creative Coatings began an investigation which turned up other inappropriate conduct by Pollard, all directed at female employees. For instance, Pollard asked a female subordinate "how do you feel if you and I were in a relationship and I said 'Keyonna, I want to have sex with you tonight?" and later initiated conversations about rape,

---

[3] Although this matter is before the Court on a Motion for Summary Judgment, because the Court is resolving and dismissing the case on procedural grounds, only facts relevant to this decision will be included.

"including discussions of how long a man should have to wait before having sex with 'his girl' after she was raped." (*Id.* at 2). Female subordinates also reported Pollard generally making them feel uncomfortable, including hugging them without their consent and sending unsolicited text messages. (*Id.*). Sometime while the investigation was ongoing, an HR representative, Belinda Zimmerman ("Zimmerman"), called Pollard to inform him of the investigation and ask that he not return to work the next week. (Pollard Dep. at 60–64).

Finally, on February 7, 2024, Pollard spoke to Zimmerman who informed him of the company's decision to terminate his employment. Pollard testified that he did not know who conducted the investigation into his conduct nor did he know who made the decision to terminate his employment, though he believes "Bruce [Holwerda] had to pull the trigger." (*Id.* at 65).

Pollard filed his Complaint on February 9, 2024—two days after his termination—alleging sex discrimination, wrongful termination, "obstruction of justice," and "unfair practice," all related to the apparently "botched" investigation into his conduct and the ways other employees engaging in misconduct were disciplined (or not). (ECF No. 1). Although his Complaint did not mention whether he had filed a charge with any civil rights agency, he confirmed in his deposition testimony and later briefing that he had not done so. *See* Pollard Dep. at 4; ECF No. 55 at 9.

## II.    **Legal Standard**

Summary judgment is appropriate if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, evidence must be viewed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). Put another way, a court will only grant summary judgment "if, on the evidence

presented, no reasonable juror could return a verdict in [the non-moving party's] favor." *Sorensen v. WD–40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015).

After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted). A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)).

### III.    Discussion

#### a.  Title VII Sex Discrimination

Pollard believes Holwerda unlawfully discriminated against him based on his sex because a "female supervisor act[ed] unprofessionally and at least 7 people quit becaus [sic] of her and wrote letters to [Holwerda] about her" and the company took no action against her, but terminated Pollard. Holwerda has moved for summary judgment on this claim, arguing that Pollard cannot establish a prima facie case of discrimination because he has pointed to no *similarly situated* employee who was treated more favorable, his inappropriate conduct with female subordinate employees warranted his termination, and he cannot establish that the reasons for his termination were pretextual. In the alternative, Holwerda presents two failings that require dismissal of Pollard's claim: (1) Pollard explicitly did not include Creative Coatings as a party and Holwerda, as an individual defendant who is not Pollard's "employer" , cannot be liable under Title VII; and

4

(2) Pollard never exhausted his administrative remedies because he failed to file a charge of discrimination with the EEOC, Fort Wayne Metropolitan Human Relations Commission, or any civil rights agency before filing this suit. Because this last issue is determinative, the Court turns to it now.

Before a plaintiff may file suit under Title VII, they are statutorily required to first file an EEOC charge within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); *see also Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) ("Before bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter."). "This requirement has two purposes: first, it allows the EEOC and the employer an opportunity to settle the matter, and second, it ensures that the employer has adequate notice of the conduct the employee is challenging." *Chaidez*, 937 F.3d at 1004 (citing *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009)).

Pollard's Complaint neglects to mention whether he tried to file a charge of discrimination with any civil rights agency, but he confirmed in both his deposition and in his response to the instant motion that he declined to make such a filing. *See* ECF No. 48-1, Pollard Dep. at 4; ECF No. 55 at 9. In response to Holwerda's exhaustion argument, Pollard explains: "The Plaintiff chose not to use the entities because there was a legal issue with Indiana Civil Rights, EEOC, and Metro when the Plaintiff filed the last two suits. There was evidence given to the court showing tampering in order to find a cause to say I have No Right To Sue." (*Id.*) Of course, Pollard does not include that evidence or indicate where in his previous suits the Court might find it.

All the same, Pollard's subjective distrust of the civil rights agencies does not excuse him from having to follow Title VII's procedural steps, and his claim must be dismissed. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009) ("Because [the plaintiff] failed to exhaust administrative

remedies, her complaint must be dismissed without prejudice."); *Kaminski v. Dart Container Corp.*, No. 21-cv-2952, 2022 WL 23033063, at *2 (N.D. Ill. Dec. 19, 2022) (granting dismissal without prejudice where plaintiff "does not contend that she filed an employment discrimination charge with [any] administrative agency . . . [and] therefore cannot seek judicial relief for her claims."). And although Holwerda provides thorough analysis for why Pollard's sex discrimination claim cannot survive summary judgment, the Seventh Circuit has held that such a grant would be procedurally improper. *See McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022) (remanding to district court where the lower court granted summary judgment on an unexhausted claim rather than dismissing without prejudice); *see also Green v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims.").[4]

Because he has failed to exhaust his administrative remedies as required by Title VII, Pollard's sex discrimination claim is dismissed without prejudice.

### b. Unfair Practice

Pollard's Complaint alleges Holwerda engaged in "unfair practice" because a "male supervisor (felonies) threatened to fight 4 people and they just agreed to put him back on the floor." (ECF No. 1 at 3). Holwerda argues this claim should be read as a claim for unfair labor practices under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160, and that such a claim should

---

[4] The Court notes that there is likely no practical distinction here between a dismissal *with* prejudice and a dismissal *without* prejudice because the 300-day window for Pollard to file an EEOC charge alleging discrimination has undoubtedly expired. *See Vasquez v. Navistar Int'l Transp.*, 2012 WL 1095223, at*4 (N.D. Ind. Mar. 30, 2012) (EEOC charge filing period for Indiana is 300 days). But as other courts in this Circuit have found, any discussion on timeliness "is hypothetical at this point" given that Pollard has not yet attempted to exhaust his discrimination claims. *Griffin v. Evanston/Skokie Cmty. Consol. Sch. Dist. 65*, No. 12 C 9828, 2013 WL 6255225, at *4 (N.D. Ill. Dec. 3, 2013).

be barred because the National Labor Relations Board ("NLRB") has exclusive jurisdiction over an NLRA unfair labor practice claim, Pollard never filed a claim with the NLRB, and the six-month statute of limitations for an unfair labor practice claim has long passed. (ECF No. 49 at 21).

While the Court can appreciate Holwerda's interpretation given the confusing way in which Pollard stated his claim, the Court reads the associated facts—that a different male supervisor acted inappropriately and was not disciplined accordingly—as alleging some other form of discrimination, rather than an "unfair labor practice" claim under the NLRA (especially given the lack of any allegations of a union or labor organization or other concerted activity). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Of course, it's equally unclear what form of discrimination Pollard is alleging, as his Complaint, briefs, and deposition testimony fail to specifically identify this supervisor beyond his name, BK, that he was another male supervisor, that he made various threats against other employees, was demoted from his supervisor position, and ultimately was fired. *See* ECF No. 48-1, Pollard Dep. at 81–83. At the same time, Pollard's Complaint and briefs generally mention both race and age disparities, though he does not specifically connect either to BK.

No matter whether he has attempted to allege a race or age discrimination claim, however, his claim fails for the same reason as his sex discrimination claim—his failure to exhaust. *See Reynolds v. Tangherlini*, 737 F.3d 1093, 1101–02 (7th Cir. 2013) (outlining the two forms of exhaustion available under the ADEA—"an administrative-exhaustion route akin to Title VII's" or waiting thirty days after filing a notice of intent to sue with the EEOC—and affirming dismissal where plaintiff failed to exhaust under either).

Under Title VII or the ADEA, then, his "unfair practice" claim is barred and will be dismissed without prejudice. *See Teal*, 559 F.3d at 693.

### c.  Obstruction of Justice

Pollard's claim for obstruction of justice is that Holwerda conducted "a botched investigation." (ECF No. 1 at 3). But as Holwerda rightly points out, obstruction of justice is a criminal offense, not a civil one, under both federal and state law. *See McCurry v. Kenco Logistics Servs.*, 942 F.3d 783, 791 n.6 (7th Cir. 2019) ("There is no civil cause of action for obstruction of justice."); *see also* 18 U.S.C. §§ 1501–1521; Ind. Code § 35-44.1-2-2.

Pollard fails to acknowledge Holwerda's argument for dismissal of this claim. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Regardless, the Court could not independently find any precedent for recognizing a civil obstruction of justice claim that would apply in this context.[5] *See Hawk v. Perillo*, 642 F. Supp. 380, 385 (N.D. Ill. Oct. 31, 1985) ("This court . . . has not found any case in which a private plaintiff was found to state a civil claim for obstruction of justice."); *Mitchell v. City of Plano*, No. 24-cv-5226, 2025 WL 137370, at *4 (N.D. Ill. May 12, 2025) ("There is no civil cause of action of obstruction of justice under [state] law.").

Thus, Pollard's claim for "obstruction of justice" is dismissed with prejudice.

---

[5] Though 42 U.S.C. § 1985(2) does contain a cause of action for conspiracies to obstruct justice in state courts, that section is inapplicable here. Even with the most liberal reading of Pollard's Complaint and filings, his claims fail to include both allegations of an agreement between any parties and any indication that there was some ongoing state judicial proceeding for which any conspirators could obstruct his access to justice. *See Williams v. St. Joseph Hosp.*, 629 F.2d 448, 451 (7th Cir. 1980).

### d. Wrongful Termination

There is not federal law providing a claim for "wrongful termination," which is instead a cause of action available under state law. *See Hollowell v. Postle Extrusion*, No. 3:17-CV-207, 2017 WL 2876316, at *4 (N.D. Ind. July 6, 2017).

The Court's jurisdiction over the state-law claim is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), which extends the jurisdiction of federal district courts to all claims that are sufficiently related to the claim or claims on which their original jurisdiction is based to be part of the same case or controversy under Article III of the Constitution. Pendent jurisdiction is a doctrine of discretion. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Thus, a district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

In the usual case in which all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims. Thus, the general rule is that when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. *Gibbs*, 383 U.S. at 726. There are, however, unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point to federal decision of the state-law claims on the merits.

This is not such a case. Therefore, the supplemental state-law claim is dismissed without prejudice to refiling in state court.

9

**IV.    Conclusion**

For these reasons, the Court:

(1) DISMISSES WITHOUT PREJUDICE Pollard's sex discrimination and "unfair practice" claims;

(2) DISMISSES WITH PREJUICE Pollard's "obstruction of justice" claim, as no such claim exists; and

(3) DISMISSES WITHOUT PREJUDICE TO REFILING IN STATE COURT Pollard's state-law wrongful termination claim.

**SO ORDERED** this 17th day of March 2026.

s/Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COUR

10